UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAVIAN D. KIRTON,

Plaintiff,

v.

JOHN DOE, SERGEANT, EMERGENCY
RESPONSE TEAM, *et al.*,

Defendants.

No. 20-CV-10860 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Savian D. Kirtion
Auburn, NY
*Pro Se Plaintiff*

David H. Chen, Esq.
Francesca L. Mountain, Esq.
Shawna C. MacLeod, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

 Savian D. Kirtion ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983

("§ 1983"), against John Doe, Sergeant, Emergency Response Team; Cardillo, Correction

Officer, Emergency Response Team; and John Doe, Correction Officer, Emergency Response

Team in their individual and official capacities (collectively, "Defendants"), alleging that

Defendants used excessive force against him after an altercation between Plaintiff and another

detainee.  (*See generally* Am. Compl. ("AC") (Dkt. No. 33).)  Before the Court is Defendants'

Motion To Dismiss the claims brought in the Amended Complaint (the "Motion") pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 40).)

 For the reasons stated herein, the Motion is granted in part and denied in part.

<u>I.  Background</u>

<u>A.  Factual Background</u>

Plaintiff "is and was at all times mentioned [in the Amended Complaint] a detainee of the County of Westchester and was in the custody of Department of Corrections Valhalla."  (AC ¶ 3.)  Plaintiff is currently incarcerated at Auburn Correctional Facility.  (*Id*.)  Plaintiff claims that on February 16, 2020, he had an altercation with another detainee "due to the other detainee attacking [P]laintiff on the stairs and [P]laintiff had to defend himself."  (*Id*. ¶ 8.)  Plaintiff states that when a correction officer "gave the order to stop fighting, [P]laintiff complied, so everything was under control, and [P]laintiff allowed [himself] to be handcuffed."  (*Id*.)  According to the February 16, 2020 Disciplinary Report by Correction Officer Lavezzoli attached to Plaintiff's Amended Complaint, Plaintiff was "sitting on top of" the other inmate "and throwing closed fist punches at [his] face" when the reporting officer arrived.  (*Id*. Ex. B at 1.)  This report further states that Plaintiff "continued to throw punches" after the officer gave orders to stop but stopped after a second order was given and stood up.  (*Id*.)

Once the Emergency Response Team ("ERT") responded, Plaintiff claims Defendants "proceeded to slam [P]laintiff into the Recreation Deck Door, then slammed [him] into the ground, the other [D]efendant punched [P]laintiff in the face."  (AC ¶ 8.)  While Plaintiff was on the ground he was "eye gouged" and a knee was put on his neck.  (*Id*.)  Defendant Cardillo then told Plaintiff "you had enough, cause we could do this all day" and asked "are you scared yet?" (*Id*.)  The ERT Sergeant "just stood by and allowed [D]efendant[]s to assault [P]laintiff and even said 'don't have too much fun.'"  (*Id*.)  Plaintiff could not respond because of the "knee to the neck."  (*Id*. ¶ 9.)  Plaintiff states that he was "not posing a threat because of being in handcuffs and under control . . . the fight was over, [P]laintiff complied with officer's order."  (*Id.* ¶ 14.)

2

A second disciplinary report by Defendant Cardillo dated February 20, 2020 states that while Plaintiff was in hand restraints, Defendant Cardillo "placed my hand on his shoulder and ordered him to remain facing the door." (*Id*. Ex. B at 2.) Plaintiff did not comply and "turned toward me and said 'get the fuck off me.'" (*Id*.) According to the report, Defendant Cardillo again ordered Plaintiff to face the door and Plaintiff stated "get the fuck off" and again "did not comply and actively resisted by tensing and turning his body weight towards me in an attempt to escape my grasp." (*Id*.) The report states that "force[] had to be utilized to maintain control" of Plaintiff. (*Id*.)

Plaintiff requested medical attention for the injuries sustained from Defendants' assault, "the swollen face, hands twisted breaking my fall, knees swollen, blurry vision." (AC ¶ 9.) Plaintiff also requested mental health treatment due to "nightmares, waking up in cold s[w]eats, and having a sense of fear around C.O.[]s." (*Id*.) Plaintiff claims that mental health treatment has "helped with the mental anguish, emotional distress, and PTSD." (*Id*.)

Plaintiff includes two "Patient Reports" attached as Exhibit 'A' to his Amended Complaint. One of these reflects a December 5, 2019 date of service; it is unclear how this is relevant to the incident in question, which occurred more than two months later. (*Id*. Ex. A at 4.) The other "Patient Report" seems to reflect a February 16 or 18, 2020 date of service. (*Id.* at 3.) This "Patient Report" states, in its "Findings" section, that there was "no radiographic evidence of acute fracture or dislocation. The bony mineralization is normal. Soft tissues are unremarkable." (*Id*.) In the "Impressions" section, the report indicates, "[n]o definite radiographic evidence of acute fracture or dislocation." (*Id*.) Plaintiff also includes with Exhibit 'A' two copies of what appear to be the same "Health Service Request," dated February 20, 2020, in which he complained of "[p]ain in my knees," "my thumb," and a "swollen" face "from

excessive force from the [ERT]" and mentioned he "would also like to speak to mental health." (*Id*. at 1.) The "Health Care Documentation" section in one of these "Health Service Requests" reflects that a week after the underlying incident, the swelling in Plaintiff's face was "down," and his left thumb was "7/10."[1] (*Id*.) The section additionally mentions physical therapy for Plaintiff's knees and elbows. (*Id*.)

Plaintiff alleges that on February 16, 2020, Correction Officer Lavezzoli wrote a disciplinary report consisting of three charges, fighting with another person, disorderly conduct, and disobedience of orders. (AC ¶ 10.) Defendant Cardillo added another charge, "interference with staff member's performance of duties or functions by oral intimidation" four days later. (*Id*.) Plaintiff claims that this was "done maliciously, so that [P]laintiff could receive more time in the keep-lock-unit." (*Id*.)

Plaintiff additionally states that another disciplinary report was written by Defendant Cardillo and that Defendant Cardillo "target[ed] [P]laintiff." (*Id*. ¶ 11.) Plaintiff attaches the disciplinary report to the Amended Complaint, which states that on March 17, 2020 "there were multiple [i]nmates still out on the block. ERT gave several orders to all unsecured inmates to lock in. [Plaintiff] did not comply and exited the [area]. . . . [Plaintiff] was given several more orders to lock in. . . . [Plaintiff] did not comply and slowly retrieved a bottle." (*Id*. Ex. C at 1.) Plaintiff states that there were multiple inmates still out on the block, "so out of all the multiple inmates why was [P]laintiff written up? It clearly shows that [P]laintiff was singled out." (AC ¶ 11.)

---

[1] There is also a number given to the pain level in Plaintiff's knees, but the number is not legible.

Finally, Plaintiff states that he submitted a prisoner grievance on February 17, 2020 and received a response on February 27, 2020 that the grievance was denied.  (*Id.* ¶ 12.)  The grievance denial, attached to the Amended Complaint, states that "it was your non-compliance that necessitated that force be used on you, even though you were already handcuffed," and that "there was no recorded video of anyone from the team digging into your eye, nor is there any documentation indicating that you informed the medical providers of this."  (*Id.* Ex. D at 2.)

### B.  Procedural History

Plaintiff filed his original complaint on December 22, 2020.  (Dkt. No. 1.)  Defendants moved to dismiss on August 9, 2021.  (Dkt. Nos. 22–24.)  In lieu of opposing the motion, Plaintiff moved to amend, (*see* Dkt.  No. 29), and was granted leave to do so on November 23, 2021, (*see* Dkt. No. 30).  The Amended Complaint was docketed on February 17, 2022.  (Dkt. No. 33.)  Defendants filed the instant Motion and an accompanying Memorandum of Law on April 15, 2022.  (*See* Not. of Mot. (Dkt. No. 40); Decl. of David H. Chen in Supp. Of Mot. (Dkt. No. 41); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 42).)  Plaintiff filed his Opposition on May 2, 2022.  (*See* Reply to Mot. to Dismiss (Dkt. No. 43); Mem. of Law for Reply to Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 44).)  Defendants filed a Reply on June 3, 2022.  (*See* Reply to Mot. ("Defs.' Reply Mem.") (Dkt. No. 45).)  Finally, Plaintiff filed a Sur-Reply on July 14, 2022.  (*See* Further Reply to Mot. ("Pl.'s Reply Mem.") (Dkt. No. 46).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics and quotation marks omitted).

B.  Analysis

Plaintiff alleges that Defendants, in their individual and official capacities, used excessive force against him in violation of the Fourteenth Amendment, and that he was targeted and singled out by Defendant Cardillo.  (*See generally* AC.)  Plaintiff states that the force used was excessive because "[P]laintiff [was] not posing a threat because of being in handcuffs and under control . . . the fight was over, [P]laintiff complied with officer's orders."  (*Id.* ¶ 14.)  Plaintiff seeks compensatory and punitive damages and declaratory relief.  (*Id.* ¶¶ 17–18.)  Defendants contend that 1) Plaintiff's *de minimis* injuries do not support a Fourteenth Amendment excessive

force claim, 2) Plaintiff has failed to allege a "class of one" or selective enforcement equal protection claim, 3) Plaintiff has failed to allege a *Monell* claim, and 4) Plaintiff's claim for declaratory relief is moot.

### 1.  Excessive Force Claim

In bringing a claim for excessive force under the Fourteenth Amendment, a plaintiff must allege that force was applied "purposefully, knowingly, or (perhaps) recklessly" because "accidental or negligent acts are not subject to Fourteenth Amendment liability." *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (citation omitted).  A plaintiff must also allege facts suggesting that the use of force was "objectively unreasonable" under the circumstances. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  The Supreme Court has suggested that the following factors bear on the objective reasonableness of force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*  Moreover, courts considering the reasonableness of force under the Fourteenth Amendment must account for the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that . . . are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (citation, alterations, and quotation marks omitted).

Additionally, claims for excessive force under the Fourteenth Amendment must involve force that is either "more than *de minimis*" or "repugnant to the conscience of mankind." *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999) (citation and quotation marks omitted); *see*

*also Lynch v. City of New York*, 952 F.3d 67, 77–78 (2d Cir. 2020) (explaining that "there is a *de minimis* level of imposition with which the Constitution is not concerned," and therefore holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a bathroom failed to state a Fourteenth Amendment claim (citation and quotation marks omitted)); *Rahman v. Schriro*, 22 F. Supp. 3d 305, 314–15 (S.D.N.Y. 2014) (explaining that "*de minimis* uses of force are necessarily excluded from constitutional recognition" (citation omitted)).

Taking Plaintiff's allegations as true, as the Court must at this stage, Plaintiff has plausibly alleged that Defendants used force purposefully.  The remaining issue, then, is whether Plaintiff has plausibly alleged that the force used was objectively unreasonable.  Plaintiff claims that while he was "not posing a threat because of being in handcuffs and under control," Defendants "slamm[ed] [P]laintiff into the Recreation Deck Door, then slammed [him] into the ground, [and that] the other [D]efendant punched [P]laintiff in the face."  (AC ¶¶ 8, 14.)[2]  While Plaintiff was on the ground he was "eye gouged" and a knee was put on his neck.  (*Id*. ¶ 8.) Courts in this circuit have found similar levels of force used against complying or restrained detainees to be unreasonable.  *See, e.g., Abbas v. Tate,* No. 20-CV-3636, 2022 WL 355401, at *4 (S.D.N.Y. Feb. 4, 2022) (finding objectively unreasonable force was used against a plaintiff

_____

[2] Plaintiff's account of the incident conflicts with the account provided by the correction officers in disciplinary reports attached to his Amended Complaint in Exhibit B.  While Plaintiff claims that he was "not posing a threat because of being in handcuffs and under control . . . the fight was over, [P]laintiff complied with officer's orders," (AC ¶ 14), Defendant Cardillo's disciplinary report states that Plaintiff was not compliant, was cursing at him, and "actively resisted by tensing and turning his body weight towards me in an attempt to escape my grasp" (*id*. Ex. B at 2).  Similarly, the grievance determination attached to the Amended Complaint in Exhibit D states that Plaintiff was noncompliant which "necessitated the force be used on you, even though you were already handcuffed."  (*Id*. Ex. D at 2.)  However, drawing all reasonable inferences in favor of Plaintiff and liberally construing the Amended Complaint, as must be done at this stage, the Court accepts Plaintiff's version of the events.

when an officer slammed the plaintiff's head against the wall, twice, after he was restrained); *Celestin v. Angeletta*, No. 19-CV-1887, 2021 WL 1062344, at *4 (S.D.N.Y. Mar. 19, 2021) (finding excessive force where correction officers punched, kicked, and elbowed a pretrial detainee when he was restrained on the ground); *Jumpp v. Simonow*, No. 20-CV-138, 2020 WL 4059850, at *13 (D. Conn. July 20, 2020) (finding excessive force where a correction officer slammed a pretrial detainee's arm without justification); *Gilliam v. Black*, No. 18-CV-1740, 2019 WL 3716545, at *9 (D. Conn. Aug. 7, 2019) (finding excessive force where an officer repeatedly banged the plaintiff's head into a wall and on a metal bench when the plaintiff was complying with the officers' directives).

Defendants contend that Plaintiff's injuries were minor, demonstrating that the force used was no more than *de minimis*, which alone merits the dismissal of Plaintiff's excessive force claim.  (Defs.' Mem. 5–7.)  However, while the severity of Plaintiff's injury is probative, it need not be dispositive in an excessive force case.  *See Rolkiewicz v. City of N.Y.*, 442 F. Supp. 3d 627, 645 (S.D.N.Y. 2020) (noting that the *de minimis* nature of injuries are not fatal to excessive force cases); *see also Wilkins v. Gaddy,* 559 U.S. 34, 40 (2010) (holding the district court erred in dismissing petitioner's complaint "based on the supposedly *de minimis* nature of his injuries"); *Walsh,* 194 F.3d at 48 (noting that a "claim of excessive force may be established even if the victim does not suffer serious . . . or significant injury" in the Fourteenth Amendment context (citations and quotation marks omitted)); *Yang Feng Zhao v. City of N.Y.*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (noting that a *de minimis* injury is relevant to an excessive force allegation "because it is probative of the amount and type of force actually used").

While "true that a *de minimis* use of force will 'rarely suffice' to state a constitutional claim, '[o]ffense to decency, rather than severity of the injury, is dispositive:  When prison

officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Ben-Reuben v. Westchester Cnty.*, No. 17-CV-9156, 2019 WL 1406868, at *3 (S.D.N.Y. Mar. 28, 2019) (quoting *Adilovic v. Cnty. of Westchester*, No. 08-CV-10971, 2011 WL 2893101, at * 5 (S.D.N.Y. July 14, 2011) (alterations in original and quotation marks omitted).  This is especially true with respect to pretrial detainees, who have not been convicted of a crime and therefore "cannot be punished at all, much less maliciously and sadistically." *Kingsley*, 576 U.S. at 400 (citation and quotation marks omitted).  Even without serious injuries, a defendant's actions "could still constitute excessive force because 'the use of entirely gratuitous force [could be] unreasonable and therefore excessive.'" *Banks v. Cnty. of Westchester*, 168 F. Supp. 3d 682, 690 (S.D.N.Y. 2016) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010)); *see also Wilkins*, 559 U.S. at 38 (noting that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury").  Because the *Kingsley* factors have "never been exhaustive, nor is each factor necessary[,]" a plaintiff can plausibly allege an unreasonable use of force without serious injury.  *See Edrei*, 892 F.3d at 534; *see also Ben-Reuben*, 2019 WL 1406868, at *3 ("Therefore, even in the absence of significant injury, if a complaint may be construed to allege the malicious use of force, an excessive force claim should not be dismissed for failure to state a claim." (quoting *Benjamin v. Flores*, No. 11-CV-4216, 2012 WL 5289513, at *4 (E.D.N.Y. Oct. 23, 2012))); *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("[C]ourts have allowed plaintiffs to recover, even though the injury caused was not permanent or severe, where the force used was excessive.").

The majority of the cases Defendants cite to in support of their claim involve summary judgment motions. *See, e.g.*, *Harris v. City of N.Y.*, No. 20-CV-784, 2022 WL 462391, at *7 (E.D.N.Y. Feb. 15, 2022) (holding no excessive force was used at summary judgment because garden-variety emotional injuries were not cognizable for excessive force claims under the Fourth Amendment); *Robinson v. Henschel*, No. 10-CV-6212, 2014 WL 1257287, at *5–6 (S.D.N.Y. Mar. 26, 2014) (holding no excessive force was used at summary judgment when plaintiff was not complying with orders and suffered no injuries); *Chambliss v. Rosini*, 808 F. Supp. 2d 658, 668–69 (S.D.N.Y. 2011) (holding no excessive force was used at summary judgment when video evidence showed plaintiff was subjected to a de minimis amount of force as a result of which he suffered no discernible injury); *Adilovic*, 2011 WL 2893101, at *6 (holding no excessive force was used at summary judgment when the plaintiff was noncompliant and the injuries alleged by plaintiff, a broken nose, were inconsistent with the medical records); *Gashi v. Cnty. of Westchester*, No. 02-CV-6934, 2007 WL 749684, at *6 (S.D.N.Y. Mar. 12, 2007) (holding no excessive force was used at summary judgment when the medical records documenting plaintiff's injuries were "inconsistent with plaintiff's claim that the officers used excessive force in that they choked and beat him, gouged his eyes, and repeatedly kicked him"); *Rincon v. City of N.Y.*, No. 03-CV-8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (holding no excessive force was used at summary judgment when defendants only caused swelling in plaintiff's leg and wrist).  However, "at the motion-to-dismiss phase, courts are typically hesitant to dismiss excessive force claims even where no serious injuries are alleged if the use of force alleged was entirely gratuitous." *Ben-Reuben*, 2019 WL 1406868, at *4 (citation and quotation marks omitted) (denying motion to dismiss despite lack of severe injuries); *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("*Hudson* . . . makes clear that

excessive force is defined as force not applied in a 'good-faith effort to maintain or restore discipline.'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))); *Benjamin*, 2012 WL 5289513, at *3 (denying motion to dismiss excessive force claim based on a single slap where "the court [cannot] say—at the motion to dismiss stage, construing the complaint liberally—that the slap was applied 'in a good faith effort to maintain or restore discipline,' rather than 'maliciously or sadistically' to cause harm" (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))).  On the face of the Amended Complaint, it is at least plausible that the force used by the Defendants was gratuitous, as the allegations that Plaintiff was restrained and compliant, which the Court accept as true, plausibly suggest there was "no legitimate penological purpose" for Defendants' alleged actions.  *Walsh*, 194 F.3d at 49 (quotation marks omitted); *see also Celestin*, 2021 WL 1062344, at *4 ("[T]he Second Circuit has held that, an officer cannot strike an individual who is compliant and does not pose an imminent risk of harm to others." (quotation marks and citation omitted)).  "Though [P]laintiff's excessive force claim may be 'weak' or 'thin,' it plausibly states a claim that [Defendants] acted unlawfully, and therefore dismissal for failure to state a claim is inappropriate."  *Benjamin*, 2012 WL 5289513, at *4 (second and third citations omitted) (quoting *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999)).  Defendants' Motion To Dismiss Plaintiff's excessive force claim is therefore denied.[3]

### 2.  Selective Enforcement or Class of One Claim

Plaintiff alleges that Defendant Cardillo "target[ed] [P]laintiff" and "singled [him] out" for punishment.  (AC ¶ 11.)  Liberally construed, this allegation could be interpreted as a

---

[3] Plaintiff alleges that Defendant John Doe ERT Sergeant "just stood by and allowed [D]efendants to assault [P]laintiff and even said 'don't have too much fun.'"  (AC ¶ 8.)  This allegation could be construed as a failure to intervene claim, however since Defendants have not addressed this failure to intervene allegation, this Court will not address the possible claim.

Fourteenth Amendment Equal Protection claim. The Equal Protection Clause states that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. Amend. XIV, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Artec Constr. & Dev. Corp. v. City of N.Y.*, No. 15-CV-9494, 2017 WL 5891817, at *3 (S.D.N.Y. Nov. 28, 2017) (quotation marks omitted).

"Where . . . a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an [e]qual [p]rotection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" *Lopes v. Westchester Cnty.*, No. 18-CV-8205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)); *see also Artec Constr. & Dev. Corp.*, 2017 WL 782911, at *2 ("Such non-class-based equal protection claims may be brought under either a "class of one" theory or a "selective enforcement" theory."). "[B]oth types of Equal Protection claims require a showing that the plaintiff was treated differently from another similarly situated comparator[.]" *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). To prevail on an equal protection claim based on selective enforcement of the law, a plaintiff must prove that: "'[i] the person, compared with others similarly situated, was selectively treated, and [ii] the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad

faith intent to injure the person.'" *Id*. at 91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). And to prevail on a "class of one" claim, a plaintiff must establish that "[i] no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [ii] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id*. at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104–05 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). While "class of one" claims require "an 'extremely high' degree of similarity between a plaintiff and comparator," selective enforcement claims "merely require[ ] a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances." *Id*. at 93.

Although the question of "whether two comparators 'are similarly situated is [generally] a factual issue that should be submitted to the jury[,]'" *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (alteration in original) (quoting *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885, 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019)), on a Rule 12(b)(6) motion the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *9 (S.D.N.Y. Feb. 5, 2021) (quoting *Vaher*, 916 F. Supp. 2d at 434). Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy*, Co., No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citations

and quotation marks omitted); *see also Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2020 WL 764280, at *6 (S.D.N.Y. Feb. 14, 2020), *appeal withdrawn sub nom. Rosario v. Vill. of Mount Kisco*, No. 20-956, 2020 WL 3250485 (2d Cir. June 9, 2020) ("[I]t is . . . incumbent upon a [p]laintiff to allege facts that would allow this Court to determine if it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently." (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (noting that a selective enforcement claim requires "more than a bare allegation that other [comparators] were treated differently")).

Here, Plaintiff alleges that Defendant Cardillo "target[ed] [P]laintiff" and "singled [him] out" because the "report written" by Defendant Cardillo "clearly stated '[a]s E.R.T. arrived there were multiple inmates still out on the block', [P]laintiff went to retrieve a bottle of water left on the stairs so he could go and lock in his cell, so out of all the multiple inmates why was [P]laintiff written up?"  (AC ¶ 11.)  However, while Plaintiff alleges he was treated differently than the other inmates still out on the block, he provides insufficient information to ascertain whether those inmates were similarly situated.  For instance, the disciplinary report attached as Exhibit C to the Amended Complaint which Plaintiff quotes from indicates that Plaintiff was not complying with orders to lock in and instead walked to retrieve a bottle.  (AC Ex. C.)  Plaintiff does not allege whether he was complying, whether the other inmates out on the block were noncompliant, whether they went to retrieve items before locking into their cells, or what additional actions they took, if any.  Plaintiff's conclusory statements do not suffice to plausibly allege the comparators were similarly situated when he has not provided information about their actions while on the block.  *See Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *9–10 (S.D.N.Y. Jan. 18, 2022) (dismissing equal protection claim "[b]ecause the Court cannot

conclude that these comparators bear a 'reasonably close resemblance' or have an 'extremely high' level of similarity[,]" when plaintiff's allegations were "conclusory and identifie[d] comparators in the abstract"); *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs").[4]

### 3.  *Monell* Claim

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *3 (S.D.N.Y. Jan. 28, 2022) ("[The] [p]laintiff's claim against the [c]ity fails for lack of facts supporting the existence of a municipal policy or practice.") (collecting cases); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 240 (E.D.N.Y. 2021) (dismissing claim against city where the plaintiffs failed

---

[4] In his Opposition, Plaintiff claims that "[D]efendant[]s could've killed me and gotten away with it.  You see this every week on the News, a Black Man shot, a Black Man brutally beaten by police, when is a Black Man going to feel safe in his own country."  (Pl.'s Mem. at 3.)  However, nowhere in the Amended Complaint does Plaintiff allege he was targeted or singled out by Defendant Cardillo because of his race.

to "sufficiently allege[ ] that they suffered constitutional violations as a result of an official policy or custom") (quotation marks omitted); *Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *report and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011).

This multi-factor test, and particularly the fifth element, reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." (italics omitted)); *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee

of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) ("[The] [p]laintiff fails to allege the existence of any other similar incident, which dooms [the] [p]laintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation and quotation marks omitted)); *Santana v. City of New York,* No. 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'"); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Atadzhanov v. City of New York,* No. 21-CV-5098, 2022 WL 4331304, at *11 (S.D.N.Y. Sept. 19, 2022) (citations omitted); *see also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226–

27 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Hincapie v. City of N.Y.,* 434 F. Supp. 3d 61, 77 (S.D.N.Y. 2020) (finding that the plaintiff "fails to state a Monell claim" because the plaintiff "has not pled facts demonstrating a direct link between his injuries and the alleged municipal policy"); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

It is well settled that a "claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012); *see also Tutora v. Correct Care Sols., LLC,* No. 17-CV-9169, 2019 WL 1383646, at *3 (S.D.N.Y. Mar. 27, 2019) (same). Because Plaintiff has asserted claims against correctional officers in their official capacity, the Amended Complaint can be construed as asserting a claim against the County. However, in his Opposition, Plaintiff clarifies that "due to [P]laintiff's Amended Complaint[,] Westchester County is no longer a defendant." (Pl.'s Mem. at 4). In his original complaint, Plaintiff explicitly listed Westchester County as a defendant in

20

the action, which he removed in the Amended Complaint.  (*See* Dkt. No. 2.)  Plaintiff further

clarifies that the action against the three named Defendants "is the sole purpose for filing of this

42 U.S.C 1983."  (Pl.'s Mem. at 4.)  Plaintiff additionally states that he "understands that a

municipality cannot be held liable" and that that is one reason that Plaintiff amended his

complaint.  (*Id.* at 5.)  Finally, in Plaintiff's Reply, he again "confirms that the suit is not against

Westchester County Department of Corrections."  (Pl.'s Reply at 2.)  Plaintiff seems to be

clarifying that he does not intend to pursue a claim against the County.  Moreover, Plaintiff has

not alleged in the Amended Complaint that his injury was caused by an official policy of the

municipality.  Plaintiff's Opposition only asserts that his "lawsuit . . . shows that [D]efendants

have been using excessive force, threatening, coercing, beating detainees up, etc. for a very long

time."  (Pl.'s Mem. at 5).

    Insofar as this statement can be construed as alleging that there is a widespread practice

of excessive force, his allegations fail.  To demonstrate a de facto policy or custom through a

widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's

unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions."

*Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (citing *Amnesty America v.

Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  A practice can constitute a custom

under *Monell* when the practice is "persistent and widespread," or "permanent and well settled as

to constitute a 'custom or usage' with the force of law" and to "imply the constructive

knowledge of policymaking officials."  *In re N.Y.C. Policing During Summer 2020

Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021) (citing *Sorlucco v. N.Y.C. Police

Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d

526, 532 (S.D.N.Y. 2012) (citing *Praprotnik*, 485 U.S. at 127) (noting that to demonstrate a

practice is sufficiently widespread and crystalized to constitute a custom under *Monell*, "a plaintiff must prove that the custom at issue is permanent and well-settled").

However, Plaintiff does not point to any instance of excessive force beyond his own.  An inmate cannot plausibly state a widespread practice simply by alleging his own experience and then extrapolating to the entire jail population.  *See Aragon v. New York*, No. 14-CV-9797, 2017 WL 2703562, at *6 (S.D.N.Y.  June 22, 2017) (dismissing claims where the plaintiff "seems to allege the existence of a practice adopted by the [County] solely based on [the] [p]laintiff's alleged experience"); *Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citations omitted)).  Plaintiff therefore has not plausibly alleged facts to support an inference that the County has a policy or custom of using excessive force against detainees.  *See King v. City of Beacon Police Dep't*, No. 20-CV-5815, 2021 WL 1550073, at *3 (S.D.N.Y. Apr. 20, 2021) (determining that conclusory allegations that plaintiff's injury was a result of a policy or custom fail when plaintiff does not sufficiently allege the existence of a policy or custom); *Jackson v. Westchester Cnty.*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing *Monell* claim where the plaintiff failed to "allege the existence of any policy, any actions taken or decisions made by any . . . policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law" and failed to "provide any factual details regarding . . . other [purported] lawsuits and grievances" on similar issues (record citations omitted) (collecting cases)).

4.  Declaratory Relief

Plaintiff seeks "[a] declaration that the acts and omissions described herein violated [P]laintiff's rights under the Constitution of the United States."  (AC ¶ 17.)  Plaintiff states that at all times mentioned in the Amended Complaint, he was "a detainee of the County of Westchester" but is now confined at the Auburn Correctional Facility.  (*Id.* ¶ 3.)  Because Plaintiff is no longer incarcerated in the County of Westchester, his request for declaratory relief is moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Hydara v. Burger*, No. 14-CV-1415, 2018 WL 1578390, at *6 (S.D.N.Y. Mar. 29, 2018) (dismissing plaintiff's claims for declaratory and injunctive relief against defendants, who were or are employed at Orange County, as moot when plaintiff was transferred to a different correctional facility).  Therefore, the request for declaratory relief is dismissed.

III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied in part and granted in part. Defendants' Motion is granted with regard to *Monell* liability, selective enforcement or class of one liability, and declaratory relief.  Defendants' Motion is denied with regard to Plaintiff's excessive force claim.  Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's *Monell*, selective enforcement or class of one liability, and declaratory relief claims are dismissed without prejudice.  If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is further advised that the second amended complaint will completely replace, not supplement, the instant Amended Complaint.

The second amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to timely file a second amended complaint, the claims may be dismissed with prejudice.  The Court will hold a status conference on May 4, 2023, at 3:00 PM.

SO ORDERED.

Dated:   March 21, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge