UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAVIAN D. KIRTON,

                                        Plaintiff,

            v.

JOHN DOE, SERGEANT, EMERGENCY
RESPONSE TEAM, *et al.*,

                                        Defendants.

---

No. 20-CV-10860 (KMK)

OPINION & ORDER

Appearances:

Savian D. Kirton
Auburn, NY
*Pro Se Plaintiff*

David H. Chen, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, NY
*Counsel for Defendants*

Francesca L. Mountain, Esq.
Shawna C. MacLeod, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Savian D. Kirton ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983

("Section 1983"), against John Doe, Sergeant, Emergency Response Team; Cardillo, Correction

Officer, Emergency Response Team; and John Doe, Correction Officer, Emergency Response

Team in their individual and official capacities (collectively, "Defendants").  (*See generally*

Second Am. Compl. ("SAC") (Dkt. No. 48).)  Before the Court is Defendants' Motion to

Dismiss all of Plaintiff's claims, except for his Fourteenth Amendment Excessive Force claim,

(the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 60).)

For the reasons stated herein, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

1.  Incident

Plaintiff "is and was at all times mentioned [in the Amended Complaint] a detainee of the County of Westchester and was in the custody of Department of Corrections Valhalla."  (SAC ¶ 3.)  Plaintiff is currently incarcerated at Auburn Correctional Facility.  (*Id*.)  Plaintiff claims that on February 16, 2020, he had an altercation with another detainee "due to the other detainee attacking [P]laintiff on the stairs and [P]laintiff had to defend himself."  (*Id*. ¶ 8.)  Plaintiff states that when a correction officer "gave the order to stop fighting, [P]laintiff complied, so everything was under control, and [P]laintiff allowed [himself] to be handcuffed."  (*Id*.)  According to the February 16, 2020 Disciplinary Report by Correction Officer Lavezzoli attached to Plaintiff's SAC, Plaintiff was "sitting on top of" the other inmate "and throwing closed fist punches at [his] face" when the reporting officer arrived.  (*Id*. Ex. B at 1.)  This report further states that Plaintiff "continued to throw punches" after the officer gave orders to stop, but stopped after a second order was given and stood up.  (*Id*.)

Once the Emergency Response Team ("ERT") responded, Plaintiff claims that the ERT "proceeded to assault [P]laintiff, . . . slam[ing Plaintiff] into the Reck Deck Door, then to the ground."  (*Id.* ¶ 8.)  In addition, Plaintiff states that he was "punched in the face, eye gouged," and "then [had] a knee to [his] neck."  (*Id.*)  Defendant Cardillo then told Plaintiff "are you scared yet?"  (*Id.*)  The ERT Sergeant "just stood by and allowed [D]efendant[]s to assault

2

[P]laintiff and even said 'don't have too much fun.'" (*Id.*)  Plaintiff alleges that the detainee that

assaulted Plaintiff was held off to the side but was not handcuffed or shackled.  (*Id.*)  Plaintiff

claims that when the ERT came on the scene, "the fight was over, plaintiff was in handcuffs[]

and shackles," so there was no need for Plaintiff to be injured.  (*Id.* ¶ 9.)

A second disciplinary report by Defendant Cardillo dated February 20, 2020 (and

attached to Plaintiff's SAC), states that while Plaintiff was in hand restraints, Defendant Cardillo

"placed [his] hand on [Plaintiff's] shoulder and ordered [Plaintiff] to remain facing the door."

(*Id*. Ex. B at 2.)  Plaintiff "did not comply and turned toward [Cardillo] and said 'get the fuck off

me.'" (*Id.*)  According to the report, Defendant Cardillo again ordered Plaintiff to face the door

and Plaintiff stated, "get the fuck off" and again "did not comply and actively resisted by tensing

and turning his body weight towards [Cardillo] in an attempt to escape [Cardillo's] grasp." (*Id.*)

The report states that "force[] had to be utilized to maintain control" of Plaintiff.  (*Id.*)

### 2. Medical

Plaintiff claims that he "suffered bruises, sprains, and tears to hands, fingers, face, and

knees, and bleary eye[s]ight," from which "[P]laintiff has almost recovered."  (*Id.* ¶ 17.)

However, he contends that he still deals with "psychological pain" and "nightmares" "on a daily

basis."  (*Id.*)

Plaintiff includes four "Patient Reports" attached as Exhibit E to his SAC.  One of these

reflects a December 5, 2019 date of service; it is unclear how this is relevant to the incident in

question, which occurred more than two months later.  (*Id*. Ex. E at 5.)  Another "Patient Report"

reflects a February 18, 2020 date of service.  (*Id.* at 6.)  This "Patient Report" states, in its

"Findings" section, that there was "no radiographic evidence of acute fracture or dislocation.

The bony mineralization is normal.  Soft tissues are unremarkable."  (*Id.*)  In the "Impressions"

section, the report indicates, "[n]o definite radiographic evidence of acute fracture or

dislocation." (*Id*.)  The other two seem to be copies of the same "Patient Report," which also

reflect a February 18, 2020 date of service. (*Id.* at 3–4.)  This report indicates in the "Findings"

section that "no fracture lytic lesion or blastic lesion is seen.  No dislocation is demonstrated."

(*Id.* at 3.)  Further, it states that there is no "joint effusion or significant degenerative change."

(*Id.*)  The "Impressions" section notes an "unremarkable left knee." (*Id.*)  Plaintiff also includes

with Exhibit E two copies of what appear to be the same "Health Service Request," dated

February 20, 2020, in which he complained of "[p]ain in [his] knees," "[his] thumb," and a

"swollen" face "from excessive force from the [ERT]" and mentioned he "would also like to

speak to mental health." (*Id*. at 1.)  The "Health Care Documentation" section in one of these

"Health Service Requests" reflects that a week after the underlying incident, the swelling in

Plaintiff's face was "down," and his left thumb was "7/10."[1]  (*Id*.)  The section additionally

mentions physical therapy for Plaintiff's knees and elbows. (*Id*.)

### 3.  Disciplinary Reports and Grievance

Plaintiff alleges that on February 16, 2020, Correction Officer Lavezzoli wrote a

disciplinary report consisting of three charges, fighting with another person, disorderly conduct,

and disobedience of orders.  (SAC ¶ 10.)  Thereafter, Defendant Cardillo "re-wr[o]te another

disciplinary report," which added another charge, "interference with staff member's performance

of duties or functions by oral intimidation" four days later. (*Id*.)  Plaintiff claims that adding the

additional charge was "uncalled for, but it . . . shows that . . . Cardillo had it out for [P]laintiff."

---

[1] There is also a number given to the pain level in Plaintiff's knees, but the number is not legible.

(*Id.*)  Plaintiff claims that Cardillo retaliated against Plaintiff by filing his disciplinary report three days after Plaintiff filed a grievance against Cardillo.  (*Id.*)

Defendant Cardillo wrote another disciplinary report, in which, Plaintiff asserts, Cardillo "target[ed] [P]laintiff."  (*Id.* ¶ 12.)  Plaintiff attaches the disciplinary report to the Amended Complaint, which states that on March 17, 2020 "there were multiple [i]nmates still out on the block.  ERT gave several orders to all unsecured inmates to lock in.  [Plaintiff] did not comply and exited the [area]. . . . [Plaintiff] was given several more orders to lock in. . . . [Plaintiff] did not comply and slowly retrieved a bottle."  (*Id.* Ex. C at 1.)  Plaintiff states that the report "clearly shows targeting."  (SAC ¶ 12.)

Finally, Plaintiff states that he submitted a prisoner grievance on February 17, 2020 and received a response on February 27, 2020 that the grievance was denied.  (*Id.* ¶ 13.)  The grievance denial, attached to the Amended Complaint, states that "it was your non-compliance that necessitated that force be used on you, even though you were already handcuffed," and that "there was no recorded video of anyone from the team digging into your eye, nor is there any documentation indicating that you informed the medical providers of this."  (*Id.* Ex. D at 3.)

B.  Procedural History

Plaintiff filed his original complaint on December 22, 2020.  (Dkt. No. 1.)  Defendants moved to dismiss on August 9, 2021.  (Dkt. Nos. 22–24.)  In lieu of opposing the motion, Plaintiff moved to amend, (*see* Dkt. No. 29), and was granted leave to do so on November 23, 2021, (*see* Dkt. No. 30).  The Amended Complaint ("AC") was docketed on February 17, 2022.  (Dkt. No. 33.)  Defendants filed their Motion to Dismiss the AC on April 15, 2022.  (Dkt. No. 40.)  Following briefing from both Parties, the Court issued an Opinion and Order on March 21, 2023, (Dkt. No. 47), dismissing Plaintiff's *Monell*, selective enforcement, and declaratory relief

claims without prejudice, *see Kirton v. Doe*, No. 20-CV-10860, 2023 WL 2586279, at *10 (S.D.N.Y. Mar. 21, 2023). The Court denied Defendant's Motion as to Plaintiff's excessive force claim. *See id.*

Plaintiff filed a SAC on April 26, 2023. (SAC.) Defendants filed their instant Motion to Dismiss the SAC on August 29, 2023, with their accompanying papers. (Not. of Mot.; Decl. of Francesca L. Mountain in Supp. Of Mot. ("Mountain Decl.") (Dkt. No. 61); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 62).) On September 1, 2023, Plaintiff filed a letter addressed to this Court, requesting "copies of [his] updated version of [his] Reply to Motion to Dismiss, an updated version of [his] Amended Complaint[,] and all exhibits." (Dkt. No. 63.) A docket entry on September 8, 2023, reflects that a letter was sent to Plaintiff's indicating that his request was processed and that copies of his SAC and Reply to Motion to Dismiss would be "furnished upon receipt of the statutory fee of $17.00." (*See* Dkt. (Dkt. Entry on Sept. 8, 2023).) Plaintiff has not responded to this letter or submitted an opposition to Defendants' Motion, and as a result, Defendants did not submit a Reply. (*See generally* Dkt.) The Court considers this Motion fully submitted.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

 "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.

Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

   B. Analysis

   Plaintiff asserts various claims arising from the events described above. (*See generally* SAC.) Construing Plaintiff's SAC liberally and interpreting it to raise the strongest arguments

that it suggests, the Court determines that Plaintiff brings the following claims: (1) a Fourteenth

Amendment excessive force claim; (2) an Eighth Amendment excessive force claim; (3) an

Equal Protection claim; (4) a First Amendment retaliation claim; and (5) a declaratory relief

claim.  (*See id.*)[2]

Defendants move to dismiss Plaintiff's Eighth Amendment excessive force, Equal

Protection, and declaratory relief claims.  (*See* Defs.' Mem. at 2.)  The Defendants do not move

to dismiss Plaintiff's Fourteenth Amendment excessive force claim as it survived Defendant's

previous Motion to Dismiss.  (*See id.*)  As for Plaintiff's First Amendment retaliation claim,

Defendants do not address such a claim in their briefing.  The Court reviews Plaintiff's claims

and the Defendants' corresponding arguments in turn.

   1.  Excessive Force Claim

In addition to his Fourteenth Amendment Excessive Force claim, in the SAC, Plaintiff

seems to also bring an excessive force claim under the Eighth Amendment.  (*See* SAC ¶ 17.)

"Excessive force claims brought by pretrial detainees 'are analyzed under the Due

Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment

---

[2] In their Motion, Defendants argue that "[t]o the extent the [SAC] asserts a *Monell* claim against Westchester County, that claim should be dismissed."  (Defs.' Mem. at 3.)  However, construing Plaintiff's SAC liberally and interpreting it to raise the strongest arguments that it suggests, the Court does not find that Plaintiff's SAC alleges such a claim.  Although Plaintiff brings claims against the Defendants in their official capacities, which can be construed as asserting a claim against the County, *see Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (noting that a "claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself"), Plaintiff has not alleged in the SAC that his injury was caused by an official policy of the municipality.  (*See generally* SAC.)  In addition, Plaintiff does not point to any instance of excessive force beyond his own.  (*See id.*)  *See Aragon v. New York*, No. 14-CV-9797, 2017 WL 2703562, at *6 (S.D.N.Y.  June 22, 2017) (dismissing *Monell* claims where the plaintiff "seem[ed] to allege the existence of a practice adopted by the [County] solely based on [the] [p]laintiff's alleged experience").  Accordingly, the Court concludes that the SAC does not include a *Monell* claim, let alone a plausible one.

Clause of the Eighth Amendment.'"  *Ben-Reuben v. Westchester Cnty.*, No. 17-CV-9156, 2019

WL 1406868, at *3 (S.D.N.Y. Mar. 28, 2019) (quoting *Holland v. City of New York*, 197 F.

Supp. 3d 529, 545 (S.D.N.Y. 2016) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239,

244 (1983))); *see also Tutora v. Aramark Corr. Servs.*, No. 17-CV-9170, 2022 WL 2237567, at

*8 (S.D.N.Y. June 22, 2022) ("The difference between claims of unconstitutional conditions of

confinement under the Eighth Amendment versus the Fourteenth Amendment is the status of the

claimant.  Whereas the Eighth Amendment governs claims brought by convicted inmates, the

Fourteenth Amendment governs claims brought by pretrial detainees.")

        Here, Plaintiff states in the SAC that "at the time of the incident," he "was a detainee

awaiting trial."  (SAC ¶ 15.)  Accordingly, Plaintiff's excessive force claim, in connection with

the incident, is properly analyzed under the Fourteenth Amendment, not the Eighth Amendment.

*See Ben-Reuben*, 2019 WL 1406868, at *3.  Therefore, the Court dismisses Plaintiff's excessive

force claim as brought under the Eighth Amendment.  Plaintiff's Fourteenth Amendment

Excessive Force claim, however, may go forward, as the Court already concluded in its previous

Opinion that such a claim survived Defendants' Motion to Dismiss the AC, *see Kirton*, 2023 WL

2586279, at *10, and Defendants do not challenge this claim in their instant Motion, (*see* Defs.'

Mem. at 2).

                2.  Equal Protection Claim

        As the Court previously explained, "[w]here . . . a plaintiff does not claim to be a member

of a constitutionally protected class, he may bring an [e]qual [p]rotection claim pursuant to one

of two theories: (1) selective enforcement, or (2) 'class of one.'"  *Lopes v. Westchester County*,

No. 18-CV-8205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting *Vaher v. Town of*

*Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)); *see also Artec Constr. & Dev. Corp. v.*

*N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15-CV-9494, 2017 WL 782911, at \*2 (S.D.N.Y. Feb.

27, 2017) ("Such non-class-based equal protection claims may be brought under either a 'class of

one' theory or a 'selective enforcement' theory."). "[B]oth types of [e]qual [p]rotection claims

require a showing that the plaintiff was treated differently from another similarly situated

comparator[.]" *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). To prevail on an equal

protection claim based on selective enforcement of the law, a plaintiff must prove that: "[i] the

person, compared with others similarly situated, was selectively treated, and [ii] the selective

treatment was motivated by an intention to discriminate on the basis of impermissible

considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights,

or by a malicious or bad faith intent to injure the person." *Id.* at 91 (quoting *Zahra v. Town of

Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). And to prevail on a "class of one" claim, a plaintiff

must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ

from those of a comparator to a degree that would justify the differential treatment on the basis

of a legitimate government policy; and (ii) the similarity in circumstances and difference in

treatment are sufficient to exclude the possibility that the defendant acted on the basis of a

mistake." *Id.* at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled

on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). While "class of one"

claims require "an 'extremely high' degree of similarity between a plaintiff and comparator,"

selective enforcement claims "merely require[] a 'reasonably close resemblance' between a

plaintiff's and comparator's circumstances." *Id.* at 93.

Here, Plaintiff does not provide any materially different or additional allegations that cure

the previously identified deficiencies in Plaintiff's claim. Like in the AC, Plaintiff alleges that

Defendant Cardillo "target[ed] [P]laintiff" because Cardillo wrote in the report that "'[a]s E.R.T.

11

arrived there were multiple inmates still out on the block.  ERT gave several orders to all

unsecured inmates to lock in.  Inmate Kirton did not comply and exited the [] day room area to

the rec deck.  Inmate Kirton was given several more order to lock in.  Inmate Kirton still did not

comply and slowly retrieved a bottle off the rec deck and slowly took his time walking up the

stairs and then finally locked in to his cell.' This was the whole ticket verbatim, which clearly

shows targeting."  (SAC ¶ 12.)

As an initial matter, Plaintiff's allegations do not demonstrate how he was targeted or

treated differently, given that he states that all unsecured inmates were told to lock in.  (*Id.*)

However, even assuming arguendo that Plaintiff alleges he was treated differently than the other

inmates still out on the block, Plaintiff, as in his AC, provides insufficient information to

ascertain whether those inmates were similarly situated.  As the Court noted in its previous

Opinion, "Plaintiff does not allege whether he was complying, whether the other inmates out on

the block were noncompliant, whether they went to retrieve items before locking into their cells,

or what additional actions they took, if any."  *Kirton*, 2023 WL 2586279, at *7.  Plaintiff's

conclusory statements do not suffice to plausibly allege the comparators were similarly situated

when he has not provided information about their actions while on the block.  *See Williams v.*

*Novoa*, No. 19-CV-11545, 2022 WL 161479, at *9–10 (S.D.N.Y. Jan. 18, 2022) (dismissing

equal protection claim "[b]ecause the [c]ourt [could not] conclude that the[] comparators b[ore] a

'reasonably close resemblance' or ha[d] an 'extremely high' level of similarity[,]" when

plaintiff's allegations were "conclusory and identifie[d] comparators in the abstract"); *Segreto v.*

*Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing

equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get

permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs[' property]").

Accordingly, because Plaintiff does not provide any materially different or additional allegations in the SAC, the Court dismisses Plaintiff's Equal Protection claim for the same reasons provided in its prior Opinion. *See Kirton*, 2023 WL 2586279, at *6–7.

### 3. Retaliation Claim

For the first time, Plaintiff claims that "after [P]laintiff filed a grievance [against D]efendant Cardillo, . . . Cardillo retaliated by writing another disciplinary report" against Plaintiff. (SAC ¶ 10.) Liberally construing Plaintiff's SAC, *see Sykes*, 723 F.3d at 403, the Court determines such a statement alleges a retaliation claim against Cardillo. Although Defendants do not address this claim in their moving papers, the Court addresses it sua sponte. *See DeBlasio v. Rock*, No. 9-CV-1077, 2011 WL 4478515, at *18–19 (N.D.N.Y. Sept. 26, 2011) (addressing, sua sponte, Plaintiff's Eighth Amendment conditions of confinement claim as to specific conditions, even though "[d]efendants d[id] not address th[ose] claim in their memorandum of law")

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Gunn v. Malani*, No. 20-CV-2681, 2023 WL 2664805, at *6 (S.D.N.Y. Mar. 28, 2023) (quoting *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019)). "To state a First Amendment claim of retaliation, an inmate must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the inmate, and (3) that there was a causal connection between the protected conduct and the adverse action.'" *Id.* (alteration adopted) (quoting *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)). "'Because

virtually any adverse action taken against a prisoner by a prison official—even those otherwise

not rising to the level of a constitutional violation—can be characterized as a constitutionally

proscribed retaliatory act,' the Second Circuit has instructed district courts to 'approach prisoner

retaliation claims with skepticism and particular care.'" *Thurmond v. Thomas-Walsh*, No. 18-

CV-409, 2019 WL 1429559, at \*9 (S.D.N.Y. Mar. 29, 2019) (alteration adopted) (quoting *Dolan*

*v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)); *see also Graham v. Henderson*, 89 F.3d 75, 79

(2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim

retaliation for every decision they dislike." (internal quotation marks and citation omitted)).

"Accordingly, First Amendment retaliation claims must be 'supported by specific and detailed

factual allegations' and may not be stated 'in wholly conclusory terms.'" *George v. County of*

*Westchester*, No. 20-CV-1723, 2021 WL 4392485, at \*4 (S.D.N.Y. Sept. 24, 2021) (quoting

*Dolan*, 794 F.3d at 295).

"It is well-established that inmates' filing of grievances is a constitutionally protected

exercise of their right under the First Amendment to petition the government for the redress of

grievances." *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at \*4 (S.D.N.Y. July 16,

2013) (citing *Graham*, 89 F.3d at 80); *see also Terry v. Hulse*, No. 16-CV-252, 2018 WL

4682784, at \*10 (S.D.N.Y. Sept. 28, 2018) (same); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353,

367 & n.21 (S.D.N.Y. 2011) (same; collecting cases).  Thus, Plaintiff's allegation that he filed a

grievance against Cardillo is sufficient to satisfy the protected speech requirement of a retaliation

claim.  (SAC ¶ 10.)

With respect to the second prong, Plaintiff claims that "Cardillo retaliated by writing

another disciplinary report" against Plaintiff.  (*Id.*)  Although "a prison inmate has no general

constitutional right to be free from being falsely accused in a misbehavior report," *Boddie v.*

14

*Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Thomas v. Calero*, 824 F. Supp. 2d 488,

499 (S.D.N.Y. 2011) (noting that "[t]he Second Circuit has long held . . . that a prison inmate has

no constitutional right to be free from being falsely accused in a misbehavior report"), there is an

exception where the inmate can "show either (1) that he was disciplined without adequate due

process as a result of the report; or (2) that the report was issued in retaliation for exercising a

constitutionally protected right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (internal

quotation marks and citation omitted); *see also Cook v. Quattrocchi*, No. 19-CV-11659, 2020

WL 564082, at *2 (S.D.N.Y. Feb. 5, 2020) (same).  Here, Cardillo allegedly issued the second

disciplinary report in retaliation for Plaintiff's participation in constitutionally protected

conduct—namely, filing a grievance, ( SAC ¶ 10)—and thus, the SAC sufficiently alleges an

adverse action based on Cardillo's issuance of the second disciplinary report,[3] *see Gill v.

Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (concluding that the plaintiff sufficiently alleged

an adverse action based on the defendants' filing of false misbehavior reports in response to the

plaintiff's prior grievance submissions); *Arriaga v. Gage*, No. 16-CV-1628, 2019 WL 2053990,

at *6 (S.D.N.Y. May 9, 2019) (concluding on a motion to dismiss that allegedly false

misbehavior reports issued in retaliation for the plaintiff's grievances "qualif[ied] as adverse

actions"); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (concluding that the

defendants' alleged retaliation—"[f]iling a false misbehavior report about [the plaintiff]" in

---

[3] Plaintiff also references in his SAC, and attaches as an exhibit to the SAC, a third disciplinary report filed by Cardillo on March 17, 2020, with respect to an incident that occurred on that day.  (*See* SAC ¶ 12; *id.* Ex. C.)  Plaintiff, however, alleges retaliation only with regard to the disciplinary report filed by Cardillo on January 20, 2020, with regard to the January 17, 2020 incident.  (*Id.* ¶ 10.)  Accordingly, the Court construes the SAC to only state one form of adverse action: Cardillo's filing of the second disciplinary report.  As for the third disciplinary report, Plaintiff alleges that he was "targeted" in this report, (SAC ¶ 12), which the Court construed as an Equal Protection claim and already addressed such a claim above, *see supra* Section II.B.2.

response to the plaintiff's submission of a grievance—"would deter a similarly situated person of ordinary firmness from exercising his First Amendment rights," and therefore "qualifie[d] as an adverse action").

Finally, in considering whether "there was a causal connection between the protected conduct and the adverse action" under the third prong, *see Gunn*, 2023 WL 2664805, at *6 (internal quotation marks and citation omitted), "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff," *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *9 (S.D.N.Y. Mar. 29, 2019) (citation omitted).  Here, Plaintiff alleges that he wrote and filed his grievance on February 17, 2020, and that Cardillo submitted his disciplinary report on February 20, 2020, four days after the incident and three days after Plaintiff filed the grievance.  (SAC ¶ 10.) "[T]emporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation."  *George*, 2021 WL 4392485, at *6 (quoting *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 413 (D. Conn. 2016), *aff'd*, 720 F. App'x 79 (2d Cir. 2018) (summary order)); *see also Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (summary order) (same); *Mateo*, 2013 WL 3863865, at *6 (finding a "plausible inference" that the defendants issued a misbehavior report in retaliation for the plaintiff's past grievances based in part on the fact that the report was issued just one day after the plaintiff had a confrontation with the defendants).  "Although temporal proximity between constitutionally protected activity and potentially retaliatory activity generally will not, on its own, allow a plaintiff to withstand a motion to dismiss," *Salahuddin v. Mead*, No. 95-CV-8581, 2002 WL 1968329, at *6 n.6

(S.D.N.Y. Aug. 26, 2002), courts may "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *Quezada v. Roy*, No. 14-CV-4056, 2017 WL 6887793, at \*10 (S.D.N.Y. Dec. 14, 2017) (internal quotation marks and citation omitted).  Though Plaintiff appears to rely solely on the temporal proximity between his protected conduct and Cardillo's alleged retaliation, some courts in this District have found that, at the pleading stage of a case, such close temporal proximity is sufficient to establish a causal connection, particularly where, as here, the defendant appears to retaliate in response to grievance of which he (or she) was the subject.  *See George*, 2021 WL 4392485, at \*6 (holding that the plaintiff's retaliation claim against the defendant would survive the motion to dismiss, where the plaintiff had alleged that defendant issued a false misbehavior report five days after the incident that was the subject of the false misbehavior report); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 518 (S.D.N.Y. 2012) (concluding, for purposes of a motion to dismiss, that where the defendant filed a false misbehavior report against the plaintiff three days after the plaintiff had filed a grievance against that defendant, "[t]he temporal proximity of th[o]se two events, as well as the common identity between the subject of [the plaintiff's] grievance and the author of the [misbehavior report], plausibly suggest[ed]" a causal connection); *Mateo*, 682 F. Supp. 2d at 435 (concluding that, on a motion to dismiss, the plaintiff's allegation that the defendant filed a false misbehavior report one day after the plaintiff filed a sexual harassment grievance against the defendant was sufficient to plead the causation element of his retaliation claim).  Consistent with these cases, the Court concludes that Plaintiff has adequately alleged the causation element of his retaliation claim.  Accordingly, the Plaintiff's retaliation claim against Cardillo survives the instant Motion.

17

4.  Declaratory Relief

Finally, Plaintiff seeks "[a] declaration that the acts and omissions described herein violated [P]laintiff's rights under the Constitution of the United States." (SAC ¶ 19.) As with the AC, Plaintiff states that at all times mentioned in the SAC, he was "a detainee of the County of Westchester" but is now confined at the Auburn Correctional Facility. (*Id.* ¶ 3.) As the Court explained it is prior Opinion, "[b]ecause Plaintiff is no longer incarcerated in the County of Westchester, his request for declaratory relief is moot." *Kirton*, 2023 WL 2586279, at *9 (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Hydara v. Burger*, No. 14-CV-1415, 2018 WL 1578390, at *6 (S.D.N.Y. Mar. 29, 2018) (dismissing plaintiff's claims for declaratory and injunctive relief against defendants, who were or are employed at Orange County Correctional Facility, as moot when plaintiff was transferred to a different correctional facility). Therefore, the request for declaratory relief is dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's SAC is granted, except as to Plaintiff's retaliation claim and Fourteenth Amendment excessive force claim. Because this is the second adjudication of Plaintiffs' claims against Defendants on the merits, the dismissed claims are dismissed with prejudice. *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration adopted) (internal quotation marks and

citation omitted)); *see also Herbert v. Delta Airlines*, No. 12-CV-1250, 2014 WL 4923100, at *5

(E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the] [c]ourt previously

granted [the pro se plaintiff] leave to replead, identifying his original complaint's deficiencies"

and "[the plaintiff's] amended complaint fail[ed] to correct any of these deficiencies," explaining

that "the [c]ourt lack[ed] a basis to believe further amended pleadings would fare any better").

     The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No.

60), and to mail a copy of this Opinion & Order to Plaintiff.  The Court will hold a telephonic

status conference on March 11, 2024, at 11:00 AM.

SO ORDERED.

Dated:   February 27, 2024
         White Plains, New York

                                  KENNETH M. KARAS
                                  United States District Judge