UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAVIAN D. KIRTON,

                              Plaintiff,

        v.

JOHN DOE, *et al*.,

                              Defendants.

No. 20-CV-10860 (KMK)

<u>OPINION & ORDER</u>

KENNETH M. KARAS, United States District Judge:

<u>Appearances:</u>

Savian Kirton
Albion, NY
*Pro se Plaintiff*

David H Chen, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, NY
*Counsel for Defendants*

Francesca L. Mountain, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Savian D. Kirton ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983 ("Section

1983"), against John Doe, Sergeant, Emergency Response Team; Cardillo, Correction Officer,

Emergency Response Team; and John Doe, Correction Officer, Emergency Response Team in

their individual and official capacities (collectively, "Defendants").  (*See generally* Second Am.

Compl. ("SAC") (Dkt. No. 48).)  Before the Court is Defendants' Motion for Summary

Judgment (the "Motion"). (*See* Defs.' Not. of Mot. ("Defs. Mot.") (Dkt. No. 93).) For the reasons explained herein, the Motion is granted in part and denied in part.

I.    <u>Background</u>

A. <u>Factual Background</u>

The following facts are taken from Defendants' statement pursuant to Local Civil Rule 56.1, (Defs.' Local Rule 56.1 Statement ("Defs. 56.1") (Dkt. No. 97)), the exhibits submitted by Defendants, (Decl. of Francesca L. Mountain ("Mountain Decl.") (Dkt. No. 94)), as well as Plaintiff's SAC and deposition transcript, (SAC; Mountain Decl., Ex. 2 ("Pl. Tr.") (Dkt. No. 94-2)), and "are recounted 'in the light most favorable to' Plaintiff, the non-moving Party," *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *2 (S.D.N.Y. Sept. 9, 2024) (quoting *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021)).

At the time of the incident, Plaintiff was a pre-trial detainee housed at the Westchester County Department of Corrections ("WCDOC"). (*See* Pl. Tr. 13:14–17, 16:11–13.) He currently incarcerated at Orleans Correctional Facility. (*See* Dkt. No. 99.) On February 16, 2020, Plaintiff had an altercation with another detainee. (*See* Pl. Tr. 22:11–19; Mountain Decl. Ex. 7 ("Video Recordings – SR 1") 2:10–2:50 (Dkt. No. 94-7).) When the reporting officer arrived, Plaintiff was "sitting on top of" the other inmate "and throwing closed fist punches at [his] face." (*See* Mountain Decl., Ex. 1 ("Pl. Compl. and Exs.") 13 (Dkt. No. 94-1); *see also* Video Recordings – SR 1 at 2:10–2:50.) A report submitted by Correction Officer Lavezzoli states that Plaintiff "continued to throw punches" after the officer gave him an order to stop, but stopped after the officer's second order. (*See* Pl. Compl. and Exs. 13.) Surveillance footage then shows Plaintiff pacing back and forth while the responding officer stands in front of him. (*See*

Video Recordings – SR 1 at 3:30–3:47.)  Plaintiff then turns around and submits to handcuffing by the officer.  (*See id*. 3:40.)

Sometime later, the Emergency Response Team ("ERT") arrived on the scene.  (*See id*. at 4:30.)  The Parties disagree about the events that took place next.  According to Plaintiff, an ERT officer (Defendant Cardillo) came up to him and began "pushing [him] up against the rec deck door."  (*See* Pl. Tr. 23:8–9.)  Plaintiff claims the ERT officers then ended up "slamming [him] to the floor" while he was in handcuffs, and one officer put his "knee on [Plaintiff's] neck."  (*See id*. 23:10–19.)  Plaintiff claims that same officer began "eye-gouging" him for a "quick second" and then began "taunting [him]."  (*See id*. 23:20–23.)  Plaintiff's grievance report from the incident alleges that the ERT officer asked, "are you scared now?".  (*See* Pl. Compl. and Exs. 20.)

Defendant Cardillo attested that when he arrived at the scene of the incident, Plaintiff was secured in handcuffs.  (*See* Mountain Decl., Ex. 3 ("Cardillo Aff.") ¶¶ 11–12 (Dkt. No. 94-3).)  He then alleges that he approached Plaintiff, and told him to face the door, at which point Plaintiff "did not comply, and instead turned to face [Cardillo]," saying something "to the effect of, 'get the fuck off me.'"  (*See id*. ¶ 13.)  Cardillo then alleges that he "applied forward pressure with [his] right hand on [Plaintiff's] left shoulder, and again ordered him to face the door," (*see id*. ¶ 14), and that Plaintiff again failed to comply, told Cardillo to "'get the fuck off [him],'" and "abruptly turn[ed] toward [Cardillo and] push[ed] his body weight against [Cardillo] in an attempt to escape [his] grasp."  (*See id*.)  Cardillo and another officer, Portillo, then attempted to subdue Plaintiff to "bring him to the floor."  (*See id*. ¶ 15.)  Cardillo alleges that because of Plaintiff's "abrupt movement and resistance" his "right arm was in contact with Plaintiff's head" when he and Portillo were bringing Plaintiff to the ground.  (*See id*.)  He then alleges that he had

to continue placing "downward pressure to Plaintiff's upper torso and head while in prone position on the floor until [Plaintiff] was secured in leg restraints." (*See id*. ¶ 16.) He stated that once Plaintiff was "secured in leg restraints, [he] released all pressure to Plaintiff." (*See id*.)

Surveillance footage from the incident shows Plaintiff standing calmly, facing the door, and in handcuffs as the ERT officers approach. (*See* Video Recordings – SR 1 at 4:29–4:40.) Body camera footage from the incident shows that an officer—presumably Cardillo—approaches and appears to push Plaintiff towards the rec door. (*See* Mountain Decl., Ex. 7 ("Body Camera Incident Footage") 1:40–1:43 (Dkt. No. 94-7).) Plaintiff appears to turn his body slightly toward the officer and say something like "what are you doing?" and the officer pushes him into the door with more force. (*See id*. at 1:43–1:45.) Plaintiff then appears to turn his body away from the rec door, towards the officers, with more force, (*see* Video Recordings – SR 1 at 4:43), and the officer forcefully pushes him back into the door, (*see id*. at 4:44.) Plaintiff appears to move back once more, and then an officer grabs him by the head and pushes him into the door, and he is brought down to the floor by two more officers. (*See* Body Camera Incident Footage at 1:47–2:00; Video Recordings – SR 1 at 4:44–4:50.) At that point, one officer is putting his bodyweight against Plaintiff's head, while another is doing so against his torso. (*See* Body Camera Incident Footage at 1:52–2:00.) A third officer appears to be restraining Plaintiff's legs. (*See id*.) After five seconds have passed, the third officer announces: "legs secure" and removes himself from Plaintiff. (*See id*. at 2:00.) The other two officers do not move away from Plaintiff for another few seconds. (*See id*. at 2:00–2:30.)

Plaintiff alleges that as a result of the incident, he suffered multiple injuries, including a swollen knee, blurry vision, and contusions to his wrist. (*See* Pl. Tr. 41:3–41:6, 51:16–21, 54:6–15.) He also alleges that as a result of the incident, he suffers from regular nightmares. (*See* Pl.

Tr. 55:5–56:6.)  A medical report prepared on the day of the incident notes that Plaintiff

complained of pain in his right knee, but that he had no observable injuries.  (*See* Mountain

Decl., Ex. 5 at 25 (Dkt. No. 94-5).)

On February 16, 2020, the day of the incident, Officer Lavezzoli filed a disciplinary

report against Plaintiff, charging him with violating three acts: (1) fighting with another person,

(2) disorderly conduct, and (3) disobedience of orders.  (*See* Mountain Decl., Ex. 5 at 29.)  On

February 17, 2020, Plaintiff filed a grievance against the officers that he alleged had assaulted

him during the incident the day before.  (*See id*. at 4.)  A disciplinary hearing was held on

February 18, 2020, where Plaintiff was found guilty of all three charges.  (*See* Mountain Decl.,

Ex. 4 ("Davis Aff.") ¶ 10 (Dkt. No. 94-4).)  Plaintiff received a punishment of ten days of

segregation, transfer to a cell in the "old jail," a write up, and a charge.  (*See* Davis Aff. ¶ 10.)

On February 20, 2020, Officer Cardillo filed a disciplinary report related to the same

incident.  (*See* Mountain Decl., Ex. 5 at 27.)  The report charges Plaintiff with (1) disorderly

conduct, (2) interference with staff member's performance of duties or functions by oral

intimidation, (3) disobedience of orders, and (4) aggravated disobedience of orders (in an

emergency).  (*See id*.)  According to WDOC's electronic management system, the report was

dismissed because it was duplicative of the February 16 Report.  (*See* Davis Aff. ¶ 13.)

B.  Procedural Background

On December 22, 2020, Plaintiff filed his initial Complaint.  (*See* Dkt. No. 1.)  On March

24, 2021, the Court granted Plaintiff's motion to proceed in forma pauperis.  (*See* Dkt. No. 4.)

On August 9, 2021, Defendants moved to dismiss Plaintiff's claims.  (*See* Dkt. Nos. 22–24.)

With the Court's permission, (*see* Dkt. No. 30), Plaintiff filed an Amended Complaint on

February 17, 2022, (*see* Dkt. No. 33.)  Defendants again moved to dismiss.  (*See* Dkt. Nos. 40–

42.)  On March 21, 2023, the Court issued an Opinion granting in part and denying in part Defendants' Motion.  (*See* Dkt. No. 47.)  Plaintiff was given thirty days to amend his complaint. (*See id*.)

Plaintiff filed a Second Amended Complaint on April 26, 2023.  (*See* Dkt. No. 48.) Defendants again moved to dismiss.  (*See* Dkt. Nos. 60–62.)  On February 27, 2024, the Court granted Defendants motion to dismiss as to all claims except Plaintiff's Fourteenth Amendment excessive force and First Amendment retaliation claims.  (*See* Dkt. No. 65.)

Following the close of discovery, (*see* Dkt. Entry October 1, 2024), Defendants submitted a letter seeking leave to file a motion for summary judgment, (*see* Dkt. No. 86), which the Court granted, (*see* Dkt. Entry October 24, 2024).  After two requests for extension, (*see* Dkt. Nos. 89, 91), which the Court granted, (*see* Dkt. Nos. 90, 92), Defendants filed their Motion for Summary Judgment, (*see* Not. of Mot.; Mountain Decl.; Mem. of L. in Supp. Mot. for Summ. J. ("Defs. Mem.") (Dkt. No. 95); Defs. 56.1).  Defendants served all Motion papers upon Plaintiff, including the Notice for pro se litigants required by Local Rule 56.2.  (*See* Dkt. Nos. 96, 98.) Plaintiff did not respond.  (*See generally* Dkt.)  On April 22, 2025, the Court issued an Order to Show Cause as to why Plaintiff had failed to respond, and provided Plaintiff until no later than May 13, 2025 to file his Opposition.  (*See* Dkt. No. 102.)  To date, Plaintiff has yet to file his Opposition.  (*See generally* Dkt.)  The Court therefore deems the Motion fully submitted.  *See Chepilko v. City of New York*, No. 18-CV-2195, 2022 WL 4554961, at *1 (S.D.N.Y. Sept. 29, 2022) (deeming a motion fully submitted after the court provided the plaintiff an extension of time and warned him that a failure to submit his opposition in time to result in the court considering the motion unopposed); *Morehouse v. Vasquez*, No. 17-CV-4836, 2020 WL

1049943, at *10 (S.D.N.Y. Mar. 4, 2020) (deeming motion fully submitted after the plaintiff
failed to file an opposition).

## II.     Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.
John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to
award summary judgment, the court must construe the record evidence in the light most
favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17
F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the
movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800
Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive
Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020)
(same).

"However, when the burden of proof at trial would fall on the nonmoving party, it
ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an
essential element of the non[-]movant's claim," in which case "the non[-]moving party must
come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order
to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d
114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive
a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical'
possibility that his allegations were correct; he need[s] to 'come forward with specific facts

7

showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the

pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a

motion for summary judgment is properly supported by documents or other evidentiary

materials, the party opposing summary judgment may not merely rest on the allegations or

denials of his pleading . . . .").

      "On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental

Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role

of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva

Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*,

477 U.S. at 323–24).

      When ruling on a motion for summary judgment, a district court should consider only

evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony

to establish facts, the statements 'must be made on personal knowledge, set out facts that would

be admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.

56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule

56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Janczuk v. United States*, No. 24-CV-3718, 2024 WL 4483225, at *1 (S.D.N.Y. Oct. 7, 2024); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Gunn*, 2024 WL 4124319, at *7; *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (same).

B. <u>Analysis</u>

1. <u>Fourteenth Amendment Excessive Force Claim</u>

"Excessive force claims brought by pretrial detainees 'are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment

Clause of the Eighth Amendment.'" *Kirton v. Doe*, No. 20-CV-10860, 2024 WL 809904, at \*5

(S.D.N.Y. Feb. 27, 2024) (quoting *Ben-Reuben v. Westchester County*, No. 17-CV-9156, 2019

WL 1406868, at \*3 (S.D.N.Y. Mar. 28, 2019)). "To prevail on an excessive force claim, a

pretrial detainee 'must show only that the force purposely or knowingly used against him was

objectively unreasonable.'" *Urena v. City of New York*, No. 22-CV-4679, 2024 WL 4149182, at

\*3 (S.D.N.Y. Sept. 10, 2024) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–397 (2015)).

      In assessing reasonableness, the Court considers the "facts and circumstances of each

particular case." *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

> The Supreme Court has identified a number of non-exclusive factors that bear on
> the reasonableness of force used: "[i] the relationship between the need for the use
> of force and the amount of force used; [ii] the extent of the plaintiff's injury; [iii]
> any effort made by the officer to temper or to limit the amount of force; [iv] the
> severity of the security problem at issue; [v] the threat reasonably perceived by the
> officer; and whether the plaintiff was actively resisting."

*See Douglas v. City of New York*, No. 18-CV-9327, 2022 WL 294075, at \*6 (S.D.N.Y. Feb. 1,

2022) (quoting *Kingsley*, 576 U.S. at 397)). "Consistent with the 'fact-specific nature of the

inquiry, granting summary judgment against a plaintiff on an excessive force claim is not

appropriate unless no reasonable factfinder could conclude that the officers' conduct was

objectively unreasonable.'" *See id*. (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113,

123 (2d Cir. 2004)).

      The Court concludes that a reasonable jury could find the amount of force used to subdue

Plaintiff was objectively unreasonable. "'[A] number of courts in [the Second Circuit] . . . have

recognized that a claim of necessary force is much harder to maintain after a suspect is already in

handcuffs." *Barrette v. Vill. of Swanton*, No. 22-CV-129, 2025 WL 1476497, at \*15 (D. Vt.

May 22, 2025) (alterations adopted) (internal quotation marks omitted) (quoting *Adedeji v.*

*Hoder*, 935 F. Supp. 2d 557, 568 (E.D.N.Y. 2013)). That is because it is "clearly established by

[the Second Circuit's] caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting." *See Butchino v. City of Plattsburg*, No. 20-CV-796, 2022 WL 137721, at *6 (N.D.N.Y. Jan. 14, 2022) (quoting *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020)). Here, it is undisputed that Plaintiff was handcuffed at the time of the interaction at issue. (*See* Pl. Dep. 23:12–15; Defs. 56.1 ¶ 23.) However, the Parties dispute whether—and to what extent—Plaintiff resisted. (*See* Pl. Dep. 22:25–23:9; Defs. Mem. 7–8.) Because this fact is disputed, this matter is best resolved by a factfinder. *See Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) (reversing district court's grant of summary judgment in favor of defendants where the extent of plaintiff's resistance was disputed); *Mehaylo v. Loris*, No. 19-CV-2002, 2022 WL 17082169, at *5–9 (D. Conn. Nov. 18, 2022) (denying summary judgment on the plaintiff's excessive force claim where the extent of their resistance was disputed), *aff'd*, No. 22-3162, 2024 WL 618761 (2d Cir. Feb. 14, 2024).

Furthermore, Officer Cardillo's hands are not visible in the portion of the video in which he is on top of Plaintiff, and therefore there remains a factual dispute as to whether he touched Plaintiff's eyes when Plaintiff was being subdued on the ground. (*See generally* Pl. Dep. 40:10–11; Defs. Mem. 8.) Plaintiff has repeatedly stated that his eyes were "gouged" during the incident, (*see* Pl. Dep. 37:10–37:12; Mountain Decl. Ex. 5 at 4), an allegation that Defendants have denied, (*see* Defs. Mem. 8). In the surveillance video submitted by Defendants, Plaintiff's eye is not visible, (*see generally* Mountain Decl., Ex. 7), and therefore the video does not foreclose the possibility that Cardillo did in fact make contact with Plaintiff's eye. A reasonable jury could credit Plaintiff's testimony, and "[b]ecause the video does not entirely contradict Plaintiff's version of events, there remain genuine issues of material fact in dispute." *Crawford v. City of New London*, No. 11-CV-1371, 2014 WL 186417, at *6 (D. Conn. Jan. 16, 2014); *see*

*also Barrette*, 2025 WL 1476497, at *15 ("Courts in the Second Circuit have held that when video evidence of an alleged civil rights violation is available, in the ordinary case, the appropriate course of action is still to permit the jury an opportunity to resolve the competing versions of events, in conjunction with the video, through the ordinary fact-finding processes in which juries engage." (internal citations, emphasis, and quotation marks omitted)); *Ringer v. City of Schenectady*, No. 22-CV-1001, 2024 WL 4859152, at *5 (N.D.N.Y. Nov. 21, 2024) (denying summary judgment on an excessive force claim because video evidence provided by defendants "does not offer a definitive picture of what occurred")). Because the resolution of this issue rests largely on "'assessments of credibility and choices between conflicting version of the events,' [the] issue then is a 'matter for the jury' and not one the court can decide on summary judgment." *Burch v. City of New York*, No. 11-CV-2841, 2016 WL 11430773, at *11 (E.D.N.Y. Apr. 22, 2016) (alterations adopted) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005)).

The record does not contain any evidence corroborating Plaintiff's testimony that he sustained permanent injuries to his eye as a result of Cardillo's actions. (*See generally* Mountain Decl.) Nevertheless, the Second Circuit has made clear that "[w]hile the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 151 (2d Cir. 2021); *see also Szabo v. Parascandolo*, No. 16-CV-3683, 2019 WL 481925 (E.D.N.Y. Feb. 7, 2019) ("However, although Plaintiff's minimal injuries and factual inconsistencies provide 'ammunition for cross-examination, they do not provide a basis for this court to recommend dismissal of [his] excessive force claims as a matter of law.'" (quoting *Galberth v. Durkin*, No.

14-CV-115, 2017 WL 4325774, at *8 (N.D.N.Y. Aug. 31, 2017)); *Joseph v. Deluna*, No. 15-CV-5602, 2018 WL 1474398, at *5 (S.D.N.Y. Mar. 23, 2018) (concluding that plaintiff's claims that he suffered injury and pain, even in "the absence of documentation of any serious injuries," were sufficient for his excessive force claim to survive summary judgment); *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013) ("The slightness of injury suffered as a result of the challenged use of force . . . does not preclude a finding that such force was objectively unreasonable."). The Court therefore concludes that granting summary judgment on this basis would be inappropriate.

For the foregoing reasons, Defendants' Motion is denied as to Plaintiff's excessive force claims.

### 2. First Amendment Retaliation Claim

Defendants next argue that Plaintiff's First Amendment retaliation should be dismissed. (*See* Defs. Mem. 9–13.) For the following reasons, the Court grants Defendants' Motion.

"In order for a prisoner's First Amendment retaliation claim under Section 1983 to survive summary judgment, a prisoner must show '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). The Second Circuit has instructed courts to treat prisoner retaliation claims with "skepticism and particular care," because of the "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020).

Courts routinely conclude that "the mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action." *Berry v. Tremblay*, No. 20-CV-177, 2021 WL 1575951, at *4 (N.D.N.Y. Apr. 22, 2021), *report and recommendation adopted*, No. 20-CV-177, 2021 WL 2580100 (N.D.N.Y. June 23, 2021); *see also Vidal v. Valentin*, No. 16-CV-5745, 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019) ("[C]ourts have held that misbehavior reports do not constitute adverse actions because they are 'de minimis: they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights.'" (quoting *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006)). Here, Defendants presented evidence—and the record does not contain any evidence to the contrary—that Cardillo's misbehavior report was ultimately dismissed as duplicative and did not result in any additional time in keeplock confinement or any other negative repercussions. (*See* Mountain Decl., Ex. 4 ¶¶ 12–13.) Therefore, the Court concludes that Plaintiff has failed to adduce a triable issue to act as to adverse action, and grants Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim. *See Robinson v. Rodriguez*, No. 23-CV-1208, 2023 WL 8934837, at *4 (D. Conn. Dec. 27, 2023) (dismissing the plaintiff's First Amendment retaliation claim where he failed to "allege any facts to suggest that he suffered any harm as result of disciplinary report"); *Berry*, 2021 WL 1575951, at *4 (dismissing First Amendment retaliation claim where the charges did not result in keeplock confinement or any other repercussions); *Vidal*, 2019 WL 3219442, at *8–9 (granting summary judgment where the plaintiff could not show that the defendant's misbehavior report resulted in confinement).

III.    Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.  The Court will hold a status conference on October 23, 2025 at 11:30 AM.  The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff and close the pending Motion (Dkt. No. 93).

SO ORDERED.

Dated:    September 22, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge